**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Heffley,<br><br>                    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>                    Defendant. | No. CV-15-08241-PCT- JZB<br><br>**ORDER** |

Plaintiff Michael Heffley seeks review of the Social Security Administration Commissioner's decision denying him social security benefits under the Social Security Act. (Doc. 1; Doc. 17.) For reasons below, the Court will affirm the Commissioner's decision.

**I.    Background**

On February 1, 2012, Plaintiff filed an Application for disability insurance benefits. (AR[1] at 143-46.) Plaintiff asserts disability beginning on December 3, 2010. (*Id.* at 143.) Plaintiff's Application was initially denied on September 20, 2012 (*id.* at 41), and upon reconsideration on May 8, 2013 (*id.* at 54). On June 10, 2013, Plaintiff requested a hearing. (*Id* at 84-85.) After holding a hearing, Administrative Law Judge (ALJ) Joan G. Knight denied Plaintiff's request for benefits in a decision dated July 16, 2014. (*Id.* at 18.) On August 26, 2015, the Appeals Council denied review of the ALJ's

---

[1] Citations to "AR" are to the administrative record.

decision, making the ALJ's decision the final decision of the Commissioner of the Social Security Administration. (*Id.* at 1-5.)

Having exhausted the administrative review process, on October 29, 2015, Plaintiff sought judicial review of the ALJ's decision by filing a Complaint in this Court pursuant to 42 U.S.C. § 405(g). (Doc. 1.) On March 14, 2016, Plaintiff filed an Opening Brief, seeking remand of this case to the Social Security Administration for an award of benefits. (Doc. 17.) On April 27, 2016, Defendant filed a Response Brief in support of the Commissioner's decision. (Doc. 22.) On May 10, 2016, Plaintiff filed a Reply Brief. (Doc. 23.)

## II. Legal Standards

### a. Standard of Review

The Social Security Act, 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's disability benefits determinations. The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007); *see also Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions. *Reddick*, 157 F.3d at 720; *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039. "However, a reviewing court must consider

the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn*, 495 F.3d at 630 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The Court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Moreover, the Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

### b. The ALJ's Five-Step Evaluation Process

To be eligible for Social Security benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). A person is under a disability only:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

The ALJ follows a five-step evaluation process to determine whether an applicant is disabled under the Social Security Act:

> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in "substantial gainful activity" and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id.* If the process continues beyond the third step, the fourth and fifth steps consider the claimant's "residual functional capacity" in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id.* § 416.920(a)(4)(iv)-(v).

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

Applying the five-step evaluation process, the ALJ found that Plaintiff is not disabled and is not entitled to benefits. (*Id.* at 18.) At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015, and Plaintiff has not engaged in substantial gainful activity since December 3, 2010, the alleged onset date. (*Id.* at 12.) At step two, the ALJ determined that Plaintiff has the following severe impairments: "degenerative disc disease of the cervical, thoracic and lumbar spine; degenerative joint disease of the feet; osteoporosis; status post orchiectomy with groin pain; and left hip degenerative changes (20 CFR 404.1520(c))." (*Id.*)

At step three, the ALJ found that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526.)." (*Id.* at 14.) At step four, the ALJ found that Plaintiff "has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a) except: [Plaintiff] can frequently climb ramps and stairs and can occasionally climb ladders ropes and scaffolds. He should avoid concentrated exposure to extreme cold, wetness and vibration and should avoid even moderate exposure to hazards." (*Id.*) The ALJ determined that Plaintiff could perform his past work as a manager/distribution warehouse. (*Id.* at 18.) Given that finding, the ALJ concluded that Plaintiff is not disabled under sections 216(i) and 223(d) of the Social Security Act. (*Id.*)

**III. Analysis**

Plaintiff argues that the ALJ erred in weighing the medical opinion evidence, discounting Plaintiff's symptom testimony, and failing to rely on a hypothetical from the vocational expert in determining that Plaintiff can perform his past relevant work. (Doc.

17.) The Court addresses these arguments below.[2]

### a. Weighing of Medical Opinion Evidence

#### i. Legal Standard

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews*, 53 F.3d at 1040-41; *see also* 20 C.F.R. § 404.1527(c)(2)-(6). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). But "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining *or* a treating physician." *Lester*, 81 F.3d at 831 (emphasis in original) (citations omitted).

#### ii. Dr. Brad Hayman's Opinions

---

[2] In the "Statement of Issues Presented For Review" section on page three of Plaintiff's Opening Brief, Plaintiff references the ALJ's "failure to follow the Appeals Council's remand order." (Doc. 17 at 3.) However, there is no mention of a "remand order" in the remainder of Plaintiff's Opening Brief or in his Reply Brief. Therefore, the Court will disregard Plaintiff's reference to such an order.

Plaintiff complains that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for the weight given to Dr. Hayman's opinions. (Doc. 17 at 9.)

On June 24, 2013, Dr. Hayman, Plaintiff's treating podiatrist, completed a Medical Source Statement of Physical Ability to Do Work-Related Activities. (AR 456-57.) Dr. Hayman opined that Plaintiff suffers from "severe painful arthritis of the right 1st metatarsal phalangeal joint." (*Id.* at 456.) Dr. Hayman further opined that Plaintiff can occasionally and frequently lift and/or carry less than five pounds, can stand and/or walk for less than one hour, can sit for eight hours, needs to elevate his right leg/foot for 30 minutes every hour, can never climb, balance, stoop, kneel, crouch, or crawl, and is unlimited in reaching, handling, fingering, feeling, seeing, hearing, and speaking. (*Id.* at 456-57.) Dr. Hayman stated that Plaintiff does not use an assistive device, and he opined that Plaintiff does not have any environmental restrictions. (*Id.* at 456.) Dr. Hayman further opined that Plaintiff's limitations are "perpetual unless [Plaintiff] has the recommended surgery." (*Id.* at 457.)

The ALJ gave Dr. Hayman's opinions little weight because those opinions are inconsistent with Plaintiff's statements regarding his daily activities and other portions of Plaintiff's testimony and/or his other reports in the record, including the amount Plaintiff can lift, and that his pain was reduced with medication, orthotics and limiting the amount of time on his feet. (*Id.* at 16-17.) The Court finds that the ALJ's citation to Plaintiff having good pain control with medication and staying off of his feet, alone, is an insufficient basis to discount Dr. Hayman's opinions. However, the ALJ cited to evidence that directly contradicts relevant portions of Dr. Hayman's opinions, which the Court does find sufficient. More specifically, Plaintiff testified and/or reported in other portions of the record that he exercises for an hour on a daily basis, sees a personal trainer two to three days a week for an hour, he was digging and working on irrigation systems during the time he alleges to have been disabled, he is able to lift 15 pounds, and he can shop. (*Id.* at 174-75, 370, 450, 686, 725, 936.) This evidence directly contradicts Dr.

1  Hayman's opinion that Plaintiff can stand for less than one hour during an eight-hour
2  work day, can carry less than five pounds, and can never climb, balance, stoop, kneel,
3  crouch, or crawl. The Court finds these inconsistencies to be sufficiently specific,
4  legitimate, and supported by substantial evidence. *Morgan v. Comm'r of Soc. Sec.*
5  *Admin.*, 169 F.3d 595, 602-03 (9th Cir. 1999) (an ALJ can properly discount the opinion
6  of a treating physician because it is inconsistent with other evidence in the record).

### iii. Dr. El-Harakeh's Opinions

On June 24, 2013, Dr. El-Harakeh, a pulmonologist, completed a Medical Source Statement of Physical Ability to Do Work-Related Activities form. (AR 454-55.) Dr. El-Harakeh opined that Plaintiff suffers from asthma and shortness of breath. (*Id.* at 454.) Dr. El-Harakeh further opined that Plaintiff can occasionally and frequently carry 20 pounds, uses a cane (although it is unknown to Dr. El-Harakeh whether it is medically necessary), and, based on Plaintiff's report of bone pain, Plaintiff can stand and/or walk less than one hour. (*Id.* at 454.) Dr. El-Harakeh also opined that Plaintiff can sit for less than one hour during an eight-hour workday, can occasionally climb, balance, stoop, kneel, crouch, and crawl, and is unlimited in reaching, handling, fingering, feeling, seeing, hearing, and speaking. (*Id.* at 454-55.) Finally, Dr. El-Harakeh opined that Plaintiff has restrictions in temperature extremes, chemicals, and dust. (*Id.* at 455.)

The ALJ gave specific and legitimate reasons supported by substantial evidence for giving Dr. El-Harakeh's opinions little weight. (*Id.* at 13, 17.) First, the ALJ stated that Dr. El-Harakeh is a pulmonologist, and his opinions regarding Plaintiff's restrictions in walking, sitting, and performing postural functions outside of those related to asthma are, as stated on the form, based on Plaintiff's allegations of pain and not objective medical evidence. (*Id.* at 13, 454.) Further, the ALJ found that Dr. El-Harakeh's opinions were rendered when Plaintiff was suffering from an acute period of illness, and that Dr. El-Harakeh's opinions are inconsistent with his own treatment notes and other medical evidence in the record. The ALJ cited to Dr. El-Harakeh's treatment note dated only a few weeks after his opinions, which states Plaintiff reported significant

improvement, and a record dated July 22, 2013, which indicates Plaintiff's pulmonary function test was within normal limits. (*Id.* at 487, 726-27, 935.) These reasons are specific, legitimate, and supported by substantial evidence. *See Tommassetti v. Astrue*, 533 F.3d 1038, 1041 (9th Cir. 2008) (An ALJ may properly discount a treating physician's opinions because the opinions are inconsistent with treatment records, conclusory or inadequately supported, or based on Plaintiff's reasonably discounted subjective symptoms).

Plaintiff argues that Dr. El-Harakeh's opinions are "both consistent with his treatment notes and the opinions of Drs. H[a]yman and Zastrow." (Doc. 17 at 11.) However, Plaintiff only references one of Dr. El-Harakeh's treatment records indicating Plaintiff was suffering from fatigue since January 2013. Further, Dr. El-Harakeh's opinions are inconsistent with those of Dr. Hayman with regard to the amount of weight Plaintiff can lift, the length of time Plaintiff can sit, and Plaintiff's abilities to climb, balance, stoop, kneel, crouch, and crawl. (*Id.* at 454-55, 456-57.)

Plaintiff also argues that the ALJ erred by finding Plaintiff's testimony that he uses a recliner for hours during the day is consistent with Plaintiff's ability to sit as a primary position. (Doc. 17 at 10-11.) However, Plaintiff appears to concede in his Opening Brief that he is "largely unimpaired in regard to sitting . . ." (Doc. 17 at 9.) And, notably, Dr. Hayman, one of the physicians Plaintiff argues should be given more weight, opined that Plaintiff can sit for eight hours during the work day. (*Id.* at 457.) Further, even if the ALJ could not reasonably conclude that Plaintiff's ability to sit throughout the day is supported by Plaintiff's statements regarding how long he uses a recliner, the ALJ gave other reasons for discounting Dr. El-Harakeh's opinions, which the Court finds are specific, legitimate, and supported by substantial evidence. For the reasons above, the Court finds that the ALJ's treatment of Dr. El-Harakeh's opinions is free of harmful error and supported by substantial evidence.

### iv. Jed Zastrow's Opinions

On March 4, 2014, Plaintiff's Chiropractor, Jed Zastrow, completed a Pain

Questionnaire. (*Id.* at 458.) Mr. Zastrow opined that Plaintiff has pain in his right scapula, lower back at his SI joints, and his feet, the pain is aching stabbing, and burning, increased activity, stooping, and driving longer distances makes the pain worse, the pain keeps Plaintiff from "picking up stuff, bending, squatting, standing for long periods," and reaching for things with his right arm, and "chiropractic helps, but nothing can take the pain away completely."

The ALJ gave Mr. Zastrow's opinions little weight. (*Id.* at 17.) Because Mr. Zastrow is considered an "other source" under Defendant's regulations in effect at the time, the ALJ was only required to give germane reasons for discounting his opinions. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (An ALJ may discount testimony from "other sources" if the ALJ "gives reasons germane to each witness for doing so").

The ALJ found that Mr. Zastrow's opinions regarding Plaintiff's pain are not in the form of specific functional limitations and are inconsistent with the treatment records, citing to records where Plaintiff stated his pain is mild and he was doing yard work as recent as 2014. (AR 17, 561-64, 571.) These reasons are sufficient and supported by substantial evidence. *Molina*, 674 F.3d at 1111.

### v.     Non-examining Agency Physicians' Opinions

Finally, Plaintiff asserts that the ALJ erred in her assessment of the non-examining agency physician's opinions. (Doc. 17 at 12.) Plaintiff's argument has no merit. First, the ALJ gave specific reasons for giving "some weight" to the non-agency physician's opinions, including that other evidence in the record (Plaintiff's statements to his physicians) supported a conclusion that Plaintiff does have increased pain while standing and walking. (AR 16.) Second, as Plaintiff appears to concede, any error in including greater limitations in the RFC than opined by these physicians is harmless. (Doc. 17 at 12); *Stout v. Comm'r, SSA*, 454 F.3d 1050, 1055 (9th Cir. 2006) (harmless error is a mistake that is "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion."). Plaintiff also generally asserts that the ALJ rejected all of the

1 medical opinion evidence, and, therefore, the ALJ's decision is not supported by
2 substantial evidence. (Doc. 17 at 5, 11-12.) However, Plaintiff fails to cite to any
3 authority that the ALJ is required to give a certain number of medical source opinions full
4 weight. Further, as stated above, the ALJ gave "some weight" to the state agency
5 reviewing physicians, and included in the RFC the environmental limitations opined by
6 those physicians, which are greater than the limitations opined by Plaintiff's treating
7 podiatrist. Likewise, the ALJ gave "partial weight" to Dr. Bendheim's opinions. The
8 ALJ explained the controverting medical evidence in the record and the basis for the
9 weight given to each opinion source. (AR 16-17.)

### b. Plaintiff's Symptom Testimony

#### i. Legal Standard

Plaintiff also argues that the ALJ erred in evaluating Plaintiff's symptom testimony. (Doc. 17 at 14.) An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Garrison*, 759 F.3d at 1014-15 (citing *Lingenfelter*, 504 F.3d at 1035-36). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The claimant is not required to show objective medical evidence of the pain itself or of a causal relationship between the impairment and the symptom. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Instead, the claimant must only show that an objectively verifiable impairment "could reasonably be expected to produce his pain." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282); *see also Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1160-61 (9th Cir. 2008) ("requiring that the medical impairment 'could reasonably be expected to produce' pain or another symptom . . . requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon").

Second, if a claimant shows that she suffers from an underlying medical

1  impairment that could reasonably be expected to produce her pain or other symptoms, the
2  ALJ must "evaluate the intensity and persistence of [the] symptoms" to determine how
3  the symptoms, including pain, limit the claimant's ability to work. *See* 20 C.F.R. §
4  404.1529(c)(1). General assertions that the claimant's testimony is not credible are
5  insufficient. *See Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must
6  identify "what testimony is not credible and what evidence undermines the claimant's
7  complaints." *Id.* (quoting *Lester*, 81 F.3d at 834).

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284; *see Orn*, 495 F.3d at 637-39. The ALJ also considers "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms . . . ." *Smolen*, 80 F.3d at 1284 (citation omitted).

At this second step, the ALJ may reject a claimant's testimony regarding the severity of his or her symptoms only if the ALJ "makes a finding of malingering based on affirmative evidence," *Lingenfelter*, 504 F.3d at 1036 (quoting *Robbins*, 466 F.3d at 883), or if the ALJ offers "clear and convincing reasons" for finding the claimant not credible. *Carmickle*, 533 F.3d at 1160 (quoting *Lingenfelter*, 504 F.3d at 1036). "'The clear and convincing standard is the most demanding required in Social Security Cases.'" *Garrison*, 793 F.3d at 1015 (quoting *Moore v. Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

      **ii.    The ALJ did not err in evaluating Plaintiff's symptom testimony.**

Plaintiff alleged that he is disabled due to degenerative joint disease, osteoporosis,

- 11 -

osteoarthritis, nerve damage and problems with bones in his feet. (AR 165.) Plaintiff claims due to pain in his groin, he is unable to stand or sit for more than a few minutes, due to pain in his feet and hip, he can only walk one to two blocks and stand for 15 minutes, due to a spine injury he cannot bend or lift, and he was prescribed a cane, which is necessary for him to use when outside the home. (*Id.* at 31, 34, 174, 198, 204.)

The ALJ discounted Plaintiff's statements regarding his impairments because: (1) with regard to his foot, hip, and back pain, his allegations of disabling pain were inconsistent with his reported daily activities and other objective medical evidence in the record; and (2) with regard to Plaintiff's groin pain, Plaintiff has not pursued additional treatment beyond the Lyrica prescribed to him and he worked successfully for three years while he had the condition. (AR 15-16.)

The Court finds the ALJ's reasons are clear, convincing, and supported by substantial evidence. The ALJ cited Plaintiff's statements regarding his activities, including exercising daily for an hour, digging irrigation systems during the time he alleges disability, and shopping on his own, and going to dinner or movies up to three times a week, which directly contradict Plaintiff's statements regarding his disabling foot, hip, and back pain. (*Id.* at 15, 174, 202, 370, 921, 936.) The ALJ further cited to specific objective medical evidence that contradicts the severity of Plaintiff's pain in his foot, hip, and back, including records showing great toe strength and extension, no nerve deficits identified in his feet bilaterally, and he was observed to walk normally without a cane and gait was normal showing no ataxia or unsteadiness, even though Plaintiff alleged he requires the use of a cane to ambulate, MRIs and X-rays showing only minor degenerative changes, and, a physical examination finding normal range of motion, no tenderness, no spasms, and straight leg raise tests were negative. (*Id.* at 364, 366-67, 370-72, 466, 714, 730, 830, 922, 924.) The ALJ may discount symptom testimony based on inconsistencies with the medical record and Plaintiff's daily activities. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Moreover, the ALJ concluded that Plaintiff's treatment of his groin pain with

medication was conservative, and Plaintiff's ability to work in his past job full time for three years with his groin pain belies his claim that his groin pain is disabling. (AR 16, 29-30, 32.) The Court finds these reasons are clear, convincing, and supported by substantial evidence. *Thomas*, 278 F.3d at 958-59 (the ALJ may consider a Plaintiff's work history in assessing credibility); *Parra*, 481 F.3d at 751 ("evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment").

Plaintiff argues generally that the ALJ erred in assessing Plaintiff's credibility because Plaintiff had four foot surgeries, which are not conservative and routine. (Doc. 17 at 14-15.) However, as noted above, the ALJ cited to specific objective medical records and Plaintiff's own statements that were inconsistent with Plaintiff's claims of disabling foot, hip, and back pain. Further, Plaintiff does not dispute that the treatment for Plaintiff's groin pain was conservative, or that Plaintiff was able to work for three years with the groin pain. For these reasons, the Court finds that the ALJ provided clear and convincing reasons supported by substantial evidence for discounting Plaintiff's symptom testimony.[3]

### c. Vocational Support for Plaintiff's Ability to Perform Past Work

Finally, Plaintiff complains that the ALJ erred at step four of the sequential process because Plaintiff suffers from both exertional and non-exertional limitations, but the ALJ did not pose a hypothetical to the vocational expert who testified at the hearing. (Doc. 17 at 12-13.)

"[A] claimant will be found to be 'not disabled' when it is determined that he or

---

[3] Plaintiff asserts, for the first time in his Reply, that "[i]f this Court affirms Defendant's denial of [Plaintiff's] claim, it will result in a denial of due process as the ALJ's credibility determination is contrary to Defendant's newly published SSR 16-3p." (Doc. 23 at 9.) However, as Plaintiff notes, SSR 16-3p did not become effective until March 2016, almost two years after the ALJ's decision at issue in this case. (AR 18.) Further, although the SSR states that "we clarify that subjective symptom testimony evaluation is not an examination of an individual's character," it states that in assessing an individual's description of his or her impairments and symptoms, Defendant will consider the consistency between the individual's statements and other record evidence. SSR 16-3p, 2016 WL 1119029. Here, the ALJ identified numerous inconsistencies between Plaintiff's statements and other record evidence.

she retains the RFC to perform: 1. the actual functional demands and job duties of a particular past relevant job; or 2. the functional demands and job duties of the occupation as generally required by employers throughout the national economy." SSR 82-61, 1982 WL 31387.  The regulations further provide the following:

> (2) Determining whether you can do your past relevant work. We will ask you for information about work you have done in the past. We may also ask other people who know about your work. (See § 404.1565(b).) We may use the services of vocational experts or vocational specialists, or other resources, such as the "Dictionary of Occupational Titles" and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity. A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.
>
> (3) If you can do your past relevant work. If we find that you have the residual functional capacity to do your past relevant work, we will determine that you can still do your past work and are not disabled. We will not consider your vocational factors of age, education, and work experience or whether your past relevant work exists in significant numbers in the national economy.

20 C.F.R. § 404.1560(b).  Although an ALJ may rely on a vocational expert's testimony at step four to determine whether a Plaintiff can perform past relevant work, the ALJ is not always required to do so.  *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) ("In the instant case, since Matthews failed to show that he was unable to return to his previous job as a receiving clerk/inspector, the burden of proof remained with Matthews. The vocational expert's testimony was thus useful, but not required."). Further, "the best source for how a job is generally performed is usually the Dictionary of Occupational

Titles." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001).

Here, the ALJ concluded that Plaintiff has the RFC to "perform a range of sedentary work as defined in 20 CFR 404.1567(a) except: the claimant can frequently climb ramps and stairs and can occasionally climb ladders and ropes and scaffolds. He should avoid concentrated exposure to extreme cold, wetness and vibrations and should avoid even moderate exposure to hazards." (AR 14.) During the hearing, the vocational expert classified Plaintiff's past work as a "manager distribution warehouse, 185.167-018, SVP-6, sedentary as described in the DOT, but [Plaintiff] describes this more of a light working level." (*Id.* at 37.)

The DOT includes the following description for "manager/distribution warehouse," 185.167-018:

> Directs and coordinates activities of wholesaler's distribution warehouse: Reviews bills of lading for incoming merchandise and customer orders in order to plan work activities. Assigns workers to specific duties, such as verifying amounts of and storing incoming merchandise and assembling customer orders for delivery. Establishes operational procedures for verification of incoming and outgoing shipments, handling and disposition of merchandise, and keeping of warehouse inventory. Coordinates activities of distribution warehouse with activities of sales, record control, and purchasing departments to ensure availability of merchandise. Directs reclamation of damaged merchandise.
>
> . . . .
>
> STRENGTH: Sedentary Work - Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.
>
> . . . .
>
> Climbing: Not Present - Activity or condition does not exist
>
> . . . .
>
> Exposure to Weather: Not Present - Activity or condition does not exist

        Extreme Cold: Not Present - Activity or condition does not exist

        Extreme Heat: Not Present - Activity or condition does not exist

        Wet and/or Humid: Not Present - Activity or condition does not exist

        . . . .

        Vibration: Not Present - Activity or condition does not exist

        Atmospheric Cond.: Not Present - Activity or condition does not exist

        Moving Mech. Parts: Not Present - Activity or condition does not exist

        Electric Shock: Not Present - Activity or condition does not exist

        High Exposed Places: Not Present - Activity or condition does not exist

        Radiation: Not Present - Activity or condition does not exist

        Explosives: Not Present - Activity or condition does not exist

        Toxic Caustic Chem.: Not Present - Activity or condition does not exist

        Other Env. Cond.: Not Present - Activity or condition does not exist

DICOT 185.167-018 (G.P.O.), 1991 WL 671292.

      In his Opening Brief, Plaintiff does not contend that he is unable to do his past relevant work based on the RFC assessed by the ALJ. (Doc. 17.) Further, Plaintiff appears to concede that if there is no conflict between the DOT description of Plaintiff's past work and the assessed RFC, the ALJ may rely entirely on the DOT in determining that Plaintiff can perform his past relevant work. (Doc. 23 at 4) ("If Mr. Heffley were found capable of a full range of sedentary work, the ALJ could rely on the [DOT] alone."). Rather, Plaintiff appears to argue that the ALJ erred in failing to pose a hypothetical to the vocational expert during the hearing to determine whether Plaintiff can perform his past work because Plaintiff asserts that the assessed RFC contains

limitations that conflict with the vocational expert's classification of Plaintiff's past work as sedentary. (Doc. 17 at 12-13.)

Plaintiff's argument lacks merit. First, Plaintiff does not cite to any authority to support his claim that the ALJ was required to pose and rely on a hypothetical to the vocational expert to determine whether Plaintiff could perform his past relevant work at step four. In his Reply, Plaintiff argues that the limitations regarding climbing and the additional environmental limitations assessed by the ALJ are not addressed by the DOT and, therefore, the ALJ was required to obtain "vocational expert testimony to provide insight as to what impact these limitations would have on either [Plaintiff's] ability to engage in his past relevant work as a distribution warehouse manager . . . or alternative work in the national economy." (Doc. 23 at 5.) To support this argument, Plaintiff cites to SSR 83-14. However, SSR 83-14 does not require the use of vocational testimony at step four. *See* SSR 83-14, 1983 WL 31254.

Further, Plaintiff does not identify any "obvious or apparent" conflict between the RFC and the DOT's description for the manager/distribution warehouse classification. *See Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016) ("For a difference between an expert's testimony and the *Dictionary's* listings to be fairly characterized as a conflict, it must be obvious or apparent. This means that the testimony must be at odds with the *Dictionary's* listing of job requirements that are essential, integral, or expected. This is not to say that ALJs are free to disregard the *Dictionary's* definitions or take them with a grain of salt—they aren't. But tasks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about."). Instead, Plaintiff generally asserts that the climbing and environmental limitations assessed by the ALJ in the RFC would impact whether Plaintiff could perform past work because work as a distribution warehouse manager is "obviously" done in a work environment containing concentrated exposure to extreme cold and "likely containing ramps and stairs." However, Plaintiff does not cite to any authority to support these assertions. And, as stated above, the DOT description for manager/distribution warehouse does not indicate

1 that it requires climbing ramps and stairs or exposure to extreme cold, wetness, vibration, or hazards.

Because Plaintiff has failed to show any "obvious or apparent" conflict, the ALJ had no duty to inquire further of the vocational expert during the hearing.  Further, Plaintiff has not argued or shown that he cannot perform his past relevant work as generally performed.  Therefore, the Court finds the ALJ's conclusion that Plaintiff can perform his past work to be free of harmful legal error and supported by substantial evidence.

Accordingly,

**IT IS ORDERED** that the Commissioners' decision is affirmed.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly and terminate this case.

Dated this 28th day of March, 2017.

Honorable John Z. Boyle
United States Magistrate Judge